OPINION
Appellants/cross-appellees, Recovery Resources of Ohio, Inc., Hard Knox Energy, Inc., and Hall Horning Oil Field Services, Inc. (collectively referred to as "RRO") appeal from the judgment of the Lake County Court of Common Pleas.
This litigation involves an oil and gas lease executed on property that came to be owned by Curtis. Curtis filed this action to quiet title. Appellees/cross-appellants, Brian and Marsha Curtis ("Curtis"), filed a motion for summary judgment. The court granted this motion. The trial court's judgment terminated RRO's claimed interest in the property. Curtis filed a cross-appeal challenging the trial court's failure to award attorney's fees.
The lease in question was executed on August 30, 1984, between Howard and Aileen Gallagher, lessors, and American Energy Development, Inc., lessee ("AED"). Neither the Gallaghers nor AED are parties to this appeal. The property was subsequently conveyed to another party and then to Curtis in July of 1998. Curtis owns fee simple title to the leased property. He filed his action to quiet title in December 1998. Prior to Curtis' purchase of the property, the lessee's interest had been assigned to a number of parties. RRO was assigned the lease in 1997.
The following are the terms of the lease relevant to the determination of this appeal:
"1. Lease of Premises: Purpose.
 "a) Lessor does hereby grant and lease unto Lessee the Premises for the purpose of drilling thereon (two wells) 2 wells * * *.
"* * *
"2. Term of Lease.
 "This lease shall commence on the date hereof and shall remain in force until terminated pursuant to the provisions of Sections 3, 4, or 5 of this lease.
"3. Failure to Commence Drilling.
 "a) In the event the drilling of one of the (two wells) 2 wells is not commenced on the Premises within twelve (12) months after the date of this lease, this lease shall terminate and shall be of no further force or effect. Second well to commence in eighteen months of this lease.
"* * *
"7. Ownership of Premises: Assignment.
"* * *
 "c) This lease may not be assigned or transferred by Lessee prior to the drilling and completion of the (two wells) 2 wells without the prior written consent of Lessor. * * *.
"* * *
"14. Default.
 "In the event Lessor considers that Lessee has not complied with its obligations hereunder, either express or implied (except payment of any royalties), Lessor shall give Lessee written notice thereof describing specifically the respects in which the lessee has breached this lease. Lessee shall have thirty (30) days after receipt of such notice within which to cure the breaches alleged by Lessor. Such notice to Lessee shall be precedent to commencement of any action by Lessor for any cause, and no such action shall be commenced until thirty (30) days after Lessee's receipt of such notice. If said breach is not cured within said thirty (30) days, the disputes shall be submitted to binding arbitration in Cleveland, Ohio in accordance with the rules and practices of the American Arbitration Association.
"15. Miscellaneous.
"* * *
 "b) As [sic] affidavit executed by lessor and filed for the record indicating that the lease has been terminated because of Lessee's failure to commence drilling of the (two wells) 2 wells within the period specified in this Lease may be relied upon by third parties as conclusive evidence that this Lease has been terminated and is of no further force or effect."
It is undisputed that AED commenced drilling of the first well within twelve months of the execution of the lease in accordance with paragraph 3(a). It is also undisputed that AED or its assignees did not commence drilling of a second well within eighteen months of the lease's execution, as required by paragraph 3(a). It appears that AED assigned the lease within the first year of its execution in violation of paragraph 7(c). It is not disputed that the Gallaghers filed an affidavit of record in accordance with paragraph 15(b) of the lease. This affidavit purports to terminate the lease because AED had failed to commence drilling the second well within the eighteen month time period specified in paragraph 3(a) of the lease. The affidavit was filed in March of 1986, nineteen months after the execution of the lease.
After filing their affidavit of termination in March of 1986, the Gallaghers took no overt action to evict AED or its assignees from the property, and continued to receive the royalty payments. Likewise, all of the Gallaghers' successors in interest did the same, except for Curtis, who, upon purchasing the property in 1998, declined to accept any royalty payments.
Curtis filed an action to quiet title. Both Curtis and RRO filed motions for summary judgment. The trial court found that the lease terminated by its own terms due to the failure of the lessee to commence drilling of the second well within the time frame specified. When the lease terminated, the lessee lost any right to assign the lease and, therefore, all of the subsequent assignments were invalid. Consequently, RRO had no leasehold interest in the property, and the trial court ordered the title to the property forever quieted, free of any claims by RRO. From this judgment, RRO timely filed its notice of appeal, assigning the following errors:
 "[1]. The trial court erred in concluding that the Gallagher oil gas lease, dated August 30, 1984, terminated by its own terms as a result of the failure of the lessee to commence a second well on the leasehold premises within the time specified in the lease.
 "[2]. The trial court erred in concluding that the lessor's affidavit, dated March 3, 1986, was an effective notice of termination of the Gallagher oil 
gas lease that could be relied on by third parties by virtue of the language contained in paragraph 15(b) of the lease.
 "[3]. The trial court erred in granting the motion for summary judgment in favor of plaintiffs-appellees and denying the motion for summary judgment requested by defendants-appellants."
Curtis has cross-appealed, assigning the following error:
 "The trial court erred in denying cross appellant's [sic] motion for attorney fees issue for review [sic]."
The standard of review for summary judgment is the same for both a trial and an appellate court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Our review is de novo. Burkholder v.Straughn (June 26, 1998), 11th Dist. No. 97-T-0146, 1998 Ohio App. LEXIS 2895, at *6. Civ.R. 56 governs motions for summary judgment. In construing Civ.R. 56(C), the Supreme Court of Ohio has stated that the moving party bears the burden of establishing that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. SeeDresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107; Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
The construction of written contracts and instruments of conveyance is a matter of law. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of syllabus. Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument. Id. at paragraph two of the syllabus. Words and phrases used must be given their natural and commonly accepted meaning, where they possess such meaning, to the end that a reasonable interpretation of the contract consistent with the apparent object and plain intent of the parties may be determined. Gomolkav. State Auto Mutl. Ins. Co. (1982), 70 Ohio St.2d 166, 167-168.
In its first assignment of error, RRO alleges that the trial court erred in concluding that the lease terminated by its own terms in 1986. For the following reasons, we do not agree.
Paragraph 3(A) of the lease creates a condition precedent to the remaining life of the lease. The language clearly states that the lease will terminate if the second well is not commenced within eighteen months of the execution of the lease. The second well was never commenced. We agree with the trial court's finding that the contract expired by its own terms. RRO's first assignment of error is without merit.
In its second assignment of error, RRO claims the trial court erred in concluding that the lessor's affidavit was an effective notice of termination of the contract. The affidavit was filed pursuant to paragraph 15(b) of the lease.
The language of paragraph 15(b) specifically states that the affidavit can be relied on by third parties as conclusive proof that the lease had terminated. Curtis, as a third party purchaser, had the right to rely on this affidavit as conclusive proof that the lease had terminated.
RRO asserts that the language of the affidavit only partially terminated the lease. The trial court addressed this issue, finding that the affidavit was "ineffective as to novation because such a contract falls within the Statute of Frauds and must meet the requirements of R.C. 1335.05." The affidavit could not partially terminate the lease, because a partial change would unilaterally alter the lease, which is prohibited by the statute of frauds. RRO's second assignment of error is without merit.
In its third assignment of error, RRO asserts that Curtis is permitted from bringing action under the lease without first complying with the provisions of paragraph 14. Paragraph 14, supra, states that the lessor must give the lessee written notice of any alleged breach and thirty days for the lessee to cure the breach.
The trial court did not find that the lessee breached the lease. Rather, the failure to commence drilling of the second well was the non-performance of a condition precedent. The lease provided that this failure terminated the lease. The trial court appropriately found that the lease terminated by its own terms.
The eighteen-month deadline has long passed. There is no possible way that drilling could be commenced on the second well within eighteen months. The clock cannot be turned back. RRO's third assignment of error is without merit.
We will now address the assignment of error that Curtis has brought on cross-appeal. Curtis asserts that the trial court erred in not granting his motion for attorney's fees. The trial court did not set forth specific reasons for denying Curtis' motion for attorney's fees.
Curtis argues that the lease provides for the payment of attorney's fees. Specifically, Curtis cites paragraph 12 of the lease, which states:
"12. Indemnity.
 "Lessee agrees to protect, indemnify and save harmless lessor from and against any and all liabilities, losses, damages, cost, expenses (including all reasonable attorneys' fees and expenses of Lessor), causes of action, suits, claims, demands, or judgments of any nature whatsoever (i) arising from any injury to or the death of any person or any damage to property on the Premises or (ii) in any manner growing out of or connected with the use or occupation of the Premises by Lessee or any part thereof or the violation by Lessee of any term, convenant or condition of this lease or any restrictions, statutes, laws, ordinances or regulations affecting the Premises or any part thereof or the use or occupancy by Lessee. Without limiting the generality of the foregoing, Lessee agrees to protect, indemnify, and same harmless Lessor and the premises from and against any and all mechanic's or other liens arising by, through or under Lessee or Lessees' agents, employees, contractors, subcontractors, suppliers and/or materialmen."
First, we note that under the "American Rule" each party is responsible for the cost of their own attorney's fees. Gargas v. Streetsboro (Sept. 14, 2001), 11th Dist. No. 2000-P-0095, 2001 Ohio App. LEXIS 4125, at *30-31, citing Homes by Calkins, Inc. v. Fisher (1993), 92 Ohio App.3d 262,273. However, "an agreement to indemnify another for legal fees is generally enforceable." Center Ridge Ganley, Inc. v. Stinn (1991),71 Ohio App.3d 514, 523, citing Worth v. Aetna Cas. Sur. Co. (1987),32 Ohio St.3d 238. Finally, a "trial court retains the discretion to determine if an attorney fee is warranted. * * *" (Citations omitted.) Id.
The trial court found that the lease terminated under its own terms eighteen months after its execution because lessee failed to commence a second well. When the lease terminated, paragraph 12 terminated as well. The lease terminated long before Curtis became the landowner, therefore, Curtis was not a party to the lease.
The lease provided that it could not be assigned prior to the second well being commenced without the consent of the lessor. The trial court found all of the assignments of the lease were invalid, because they were all made before the second well was commenced and without the consent of the lessor.
In light of the above findings, the lease is no longer in effect, and neither Curtis nor RRO are parties to the lease. Under these circumstances, we cannot say that the trial court abused its discretion by denying Curtis' motion for attorney's fees. Curtis' cross assignment of error is without merit.
The judgment of the trial court is affirmed in all respects.
ROBERT A. NADER, J., concurs, WILLIAM M. O'NEILL, P.J., dissents.